# Wadsworth *v.* Sellers & Orum Co.

## *Trover.*

(Decided May 16, 1911.   56 South. 112.)

1. *Trover and Conversion; Burden of Proof.*—In an action of trover a plaintiff asserting title has the burden of establishing that fact.

2. *Appeal and Error; Review; Questions.*—An objection to a question will not be reviewed where the question is not answered, and where the answer to another question was that the witness knew nothing about the matter inquired about, objection to the question will not be reviewed.

3. *Same; Presumption; Finding of Court; Evidence.*—Where a case is tried by the court without a jury on the complaint and plea of the general issue, this court is now governed on an appeal from such judgment in reaching its conclusion as to the correctness of

such judgment by the evidence as it is disclosed by the bill of exceptions, and may not indulge presumption in favor of the findings of the court below.

4. *Same.*—Where the evidence shown by the bill of exceptions is so conflicting that this court is not able to say with reasonable satisfaction to itself that the plaintiff was entitled to recover in the lower court, it will affirm a judgment for defendant.

APPEAL from Montgomery Circuit Court.

Heard before Hon. W. W. PEARSON.

Action in trover for the conversion of two bales of cotton brought by A. M. Wadsworth, against Sellers & Orum Company. Judgment for defendant and plaintiff appeals. Affirmed.

STEINER, CRUM & WEIL, for appellant. The plaintiff made out his case.—*Boutwell v. Parker,* 124 Ala. 341; *Milner v. DeLoach M. Co.,* 139 Ala. 654. If the appellee was entitled under the pleading to defeat appellant's right of recovery by proving the partnership, the burden was on the appellant to establish the existence of such partnership or such acts as would bind the alleged partner, or which misled the defendant to his damage.— *Alexander v. Handley,* 96 Ala. 220; *Ownesboro W. Co. v. Bliss,* 132 Ala. 253; *Kinard v. Hill,* 102 Ala. 570; *Levy v. Alexander,* 95 Ala. 101; note to 18 L. R. A. (N. S.) 975. A person may be interested in and receive a part of the profits of the business without becoming a partner.—*Gulf S. M. Co. v. Byrd,* 129 Ala. 192. Appellee knew nothing of the existence of the partnership or the facts thereof at the time of the purchase, and cannot take advantage of such subsequent development to establish an estoppel in pais.—*Alexander v. Handley, supra;* 78 Ill. 38; 37 Me. 252. Conceding that there was a partnership for raising cotton yet the principles applicable in cases of commercial or trading partnership, whereby each has implied authority to bind the partnership, do not apply.—*McCrary v. Slaughter,* 58

Ala. 230; *Woodruff v. Scaife,* 83 Ala. 154; *Lee v. Banks,* 11 L. R. A. 238.

C. H. ROQUEMORE, and E. T. GRAHAM, for appellee. The objection to those questions which were not answered present nothing for review. If Poole was a partner the sale by him passed a good title.—*Ellis v. Allen,* 80 Ala. 515; *Halstead v. Shepherd,* 23 Ala. 568; *Hirschfelder v. Kiser,* 59 Ala. 338; 22 A. & E. Enc. of Law, 95. Whether or not they were partners is a question for the jury, and the plaintiff failed to make out his title.— *Bolling v. Kirby,* 90 Ala. 222.

DE GRAFFENRIED, J.—This was an action of trover brought by the appellant against the appellee for the alleged conversion of two bales of cotton. The case was tried upon the plea of the general issue by the court without a jury. Judgment was rendered in favor of the defendant, and the plaintiff appeals.

The first three assignments of error relate to objections made by appellant to questions propounded by appellee to witnesses in the cause. The first question was not answered; the answer of the witness to the second question was that the witness knew nothing as to the matter inquired about; and the answer of the witness to the third question was of no injury to appellant. For these reasons, the first three assignments of error present nothing to this court for determination.

The fourth assignment of error calls in question the action of the court in rendering judgment against the appellant, and presents the only question in the case which it is necessary for us to consider. The plaintiff claimed title to the property, and the burden was on him to establish that title. Under the evidence in the case, if the plaintiff was the owner of the two bales of

cotton delivered by Poole to the defendant, he was entitled to a judgment. If not, he was not. If the title to the property was in plaintiff when Poole delivered it to the defendant, then, under the undisputed testimony, the defendant was guilty of a conversion of the property before the commencement of the suit, and the plaintiff was entitled to recover. The defendant bought the cotton in October, 1908, and this suit was brought in May, 1909, and the defendant had then sold the cotton without, so far as the evidence discloses, the knowledge or consent of the plaintiff. It is not contended, and cannot be contended, under the evidence, that Poole was authorized by the plaintiff to sell the cotton to defendant, and as the defendant bought the cotton from Poole, without the knowledge or consent of plaintiff, and, without the knowledge or consent of plaintiff, sold the cotton and kept the proceeds for its own use and benefit before the commencement of this suit, the defendant was plainly guilty of a conversion of plaintiff's cotton, provided the cotton belonged to plaintiff, as, in his testimony, he claims it did.

The plaintiff, in the year 1908, rented some land from his father, and he and one Poole worked that land together and raised on it a crop of cotton. The evidence shows that the cotton in dispute grew on that land and was the product of the joint labor of Poole and plaintiff. Prior to the commencement of the gathering season, plaintiff was taken sick, and some one was hired and worked on the farm in his stead. Plaintiff's father and brother were requested by the plaintiff to look after the crop, but, after plaintiff became sick, Poole, it appears from the testimony, was engaged in gathering the crop, and in having the cotton ginned and prepared for market. The testimony shows that from the commencement of the gathering season the plaintiff was

staying some distance from the place where the crop was raised, that he personally knew but little of what was being done, and that the entire matter was left by him in the hands of his father, brother, and Pool. It appears, also, from the testimony, that six bales of cotton were raised on the lands which were rented by plaintiff and worked by him and Poole.

On the 8th day of October, 1908, Poole took, without the knowledge or consent of plaintiff, two bales of the cotton from the gin where it had been packed, brought them to Montgomery, placed them in defendant's warehouse in his own name, claiming to be the owner of them, and on the same day sold them to defendant. The defendant did not know Poole and bought the cotton in good faith in the ordinary course of trade, without notice of any claim of plaintiff, paying the market price therefor. The defendant, it appears from the evidence, is a cotton broker and cotton warehouseman.

The plaintiff's testimony shows title to the cotton, and if believed the plaintiff was entitled to recover. The plaintiff testified that in March, 1908, he employed Poole to work with him, as an agricultural laborer, for his keep and $8 per month, and that the only relations that existed between him and Poole were those of master and servant. Of course, if this is true, Poole had no right to sell, under the evidence in this case, plaintiff's cotton. But was that testimony true, or does its truth so clearly appear that a trier of the facts can say that he is reasonably satisfied from the evidence in the case that only the relations of master and servant between Poole and plaintiff did exist, and that he is therefore reasonably satisfied from the evidence that plaintiff was the owner of the cotton when Poole sold it to defendant? This is the only question in this case. If the truth of plaintiff's statement that Poole was his serv-

ant, and as such aided him in making the cotton, appears, taken in connection with all the other testimony in the case, with such reasonable certainty that this court can say that it is reasonably satisfied that Poole was plaintiff's servant, and not his partner, in making the cotton, then the plaintiff was entitled to recover. Otherwise he was not.

The law requires us, in a case like the present, to be governed in our conclusions by the evidence as it is disclosed by the bill of exceptions, and to indulge no presumption in favor of the findings on the facts by the court below. This renders our task difficult and delicate as we cannot see the witnesses and observe their manner on the stand—a most valuable aid to a trier of the facts in ascertaining the truth.

While the plaintiff was being examined as a witness, he testified that he did not think he knew Mr. Orum; that he did not think that he had ever seen him before the day of the trial; that if Orum, on or about December 18, 1908, came to his brother's house he did not see him; that he did not tell Orum, at that time, that he and Poole worked as partners; and that he had never had any conversation with Orum at all.

W. J. Orum, a witness for plaintiff, testified that in December, 1908, he saw the plaintiff at the house of plaintiff's brother, and that plaintiff said, referring to his relations with Poole in raising the cotton, "Yes; we were partners;" and said, referring to Poole, "He has treated me mighty bad;" that plaintiff told witness "that the cotton sued for was raised by him and Poole as partners, so far as his knowledge went; that he and Poole were working as partners, raising same."

One Ansley Yelder, a witness for plaintiff, testified that plaintiff told him that he and Poole were working the crop on shares.

[Wadsworth v. Sellers & Orum Co.]

Both of the above witnesses seriously contradict the testimony of the plaintiff in its most vital part, and the testimony of Orum was so framed as to amount, in every technical particular, to an impeachment.

The evidence all shows, as above stated, that the crop was raised by the joint labor of plaintiff and Poole; that Poole gathered it and had it ginned and packed for market, and there is much in the evidence tending to shake confidence in the testimony of the plaintiff. We cannot say, with reasonable satisfaction to ourselves, that his testimony establishes his title to the cotton, and by his testimony, and his testimony only, is his title, if he had title, to the cotton shown.

If plaintiff's testimony is true, he was the owner of the cotton; if that of Orum is true, the cotton belonged to a partnership; if that of Yelder is true, it belonged to Poole and plaintiff as tenants in common, or to a partnership. We impute perjury to none of these witnesses, but the conflicts are such that we are not able, as above stated, to say, with reasonable satisfaction to ourselves, that plaintiff was entitled to recover.

It is not for us to speculate, under the evidence in this case, what the rights of plaintiff were, if he and Poole were partners, or what the plaintiff's rights were, if he and Poole made the crop on shares, or as tenants in common. It is sufficient for us to say that we are not reasonably satisfied from the evidence, as to what, if any, title the plaintiff had to the cotton, and for that reason we are not able to say that the court below erred in rendering judgment against him.

Let the judgment of the court below be affirmed.

Affirmed.